Filed 9/5/14  Von Beltz v. Bentley Homes CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HEIDI VON BELTZ,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BENTLEY HOMES, LLC, et al.,<br><br>    Defendants and Respondents. | B252408<br><br>(Los Angeles County<br>Super. Ct. No. BC465929) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kevin C. Brazile, Judge.  Affirmed.

Law Offices of Jerome Zamos, Jerome Zamos for Plaintiff and Appellant.

Craig Mordoh for Defendants and Respondents.

_____

Plaintiff, a quadriplegic, lived in a house with her sister, who owned the home. They lost the house to foreclosure, and it was purchased by a defendant at a trustee's sale. That defendant subsequently prevailed in an unlawful detainer action.

In this action, plaintiff contends that defendants violated the federal Fair Housing Act (42 U.S.C. § 3601 et seq.) (FHA) by rejecting requests to delay her eviction from the home. We find that defendants had no obligation to provide the accommodation sought by plaintiff and we therefore affirm the judgment entered after a grant of nonsuit by the trial court.

## BACKGROUND

Plaintiff and appellant Heidi Von Beltz filed suit against defendants and respondents Bentley Homes, LLC (Bentley), Jay Wiener, and Melvin Wiener in July 2011. Her operative first amended complaint (FAC), filed in November 2011, alleged that Jay and Melvin Wiener were managing agents of Bentley, a business that actively engaged in the sale and rental of residential real property. Von Beltz was forced by defendants to vacate the residence in which she was living pursuant to a notice to vacate and writ of possession posted at the property in August 2011. According to the FAC, the eviction came despite information given to Jay Wiener in July 2011 that Von Beltz was physically disabled and that there were a number of parties who were prepared to purchase the property in order to avoid disruption to Von Beltz. Jay Wiener was requested to provide an accommodation delaying Von Beltz's removal from the property. Defendants, however, refused to accommodate Von Beltz, and her forced removal from the property (which had been specially altered for her physiological needs) subjected her to potentially life-threatening consequences. Based on these allegations, the FAC asserted a cause of action for violation of the FHA.[1]

The matter went to trial before a jury on July 10, 2013. Plaintiff first called Jay Wiener, who testified that Bentley was in the business of purchasing single-family

---

[1] Other causes of action were dismissed by plaintiff following defendants' filing of a demurrer.

2

residential properties at trustees' sales for resale at a profit. On April 29, 2011, Bentley acquired title to the property at issue in this case at a trustee's sale. Approximately a week or two after Bentley acquired title to the subject property, Jay Wiener made contact with Von Beltz's sister Christy Weston, an occupant and the prior owner of the property, but was denied access to the property.

David Robb is a journalist who has followed Von Beltz since she suffered an accident during the filming of a movie that left her quadriplegic. Robb testified that he learned Bentley acquired an interest in the subject property as the result of the foreclosure of a deed of trust recorded against the property. He called Bentley and spoke to Melvin Wiener, who told him that Von Beltz was not protected from eviction and "her ass will be on the street."

Von Beltz testified that she suffered an infection in 2010 for which she was still being treated in April 2011, when she learned that Bentley had acquired an interest in the property. She described how occupying the property with her sister and animals had helped her cope with her disability. Being forced to vacate the property had a negative impact on her physical and emotional condition, and some of the progress she made from her infection in 2010 reversed. Von Beltz and her sister moved into temporary facilities in September 2011, causing them difficulty in gaining access to Von Beltz's medical equipment and in receiving assistance of nursing aides.

Weston testified that she and Von Beltz occupied the subject property until September 2011. She first met Melvin Wiener in April 2011, when he came to see the property. At that time, Weston told him that Von Beltz was inside the house and could not be disturbed because she was receiving intravenous transfusions in connection with the infection she suffered. Weston further told him that any attempt to move Von Beltz would cause serious problems with her physical well-being. Several weeks later, Weston observed Jay Wiener entering the backyard of the property by scaling a wall. She told him that Von Beltz's physical condition would make it difficult to relocate without significant planning. Weston testified that in response to her description of her sister's physical condition both Melvin and Jay Wiener told her that no one cared. Afterward,

3

Weston was served with a three-day notice to quit and pleadings in connection with an unlawful detainer action. During the course of the unlawful detainer action, Weston described Von Beltz's physical condition to defendants and the need to avoid or delay any change in her residential status. Weston testified that attempts to avoid the threatened removal included: (i) an offer to purchase the property for $525,200, which was to be funded by a Mr. Miller, a co-occupant of the property, and (ii) an offer to come to an arrangement that would avoid exacerbating Von Beltz's physical condition. These proposals were rejected by Jay Wiener and no counter proposals were made. Despite continued efforts to avoid or delay eviction, Weston and Von Beltz were forced to vacate the property on September 5, 2011, one day prior to a threatened lockout by the Los Angeles County Sheriff's office. Because of the removal, Weston and Von Beltz were unable to locate an appropriate location for setting up Von Beltz's medical equipment and were unable to properly coordinate the services of nursing aides.

At the close of plaintiff's evidence, defendants moved for nonsuit pursuant to Code of Civil Procedure section 581c. The trial court granted the motion on July 11, 2013. Plaintiff thereafter moved for a new trial, which was denied. The statement of decision, entered by the court on September 20, 2013, stated in pertinent part: plaintiff failed to carry her burden of providing sufficient evidence that defendants engaged in a discriminatory housing practice; plaintiff failed to present legal authority for the proposition that a person who is lawfully evicted is entitled to a reasonable accommodation to delay execution of the judgment solely to obtain more time to leave the property; in the prior unlawful detainer proceeding, it was found that plaintiff waived a claim that the court erroneously denied her request for a reasonable accommodation defense; and plaintiff had no lawful right to be on the property once the three-day notice to quit served upon Weston had expired, and therefore she had no right to an accommodation.

Judgment in favor of defendants was entered on October 25, 2013. Von Beltz timely appealed.

4

After a plaintiff's presentation of evidence in a jury trial, the defendant may move for nonsuit to challenge the sufficiency of the evidence. (Code Civ. Proc., § 581c; *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 117.) Motions for nonsuit pose issues of law for the trial court and the reviewing court; therefore, we review a grant of nonsuit de novo. (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 43.)

"Because a grant of the motion serves to take a case from the jury's consideration, courts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper. The rule is that a trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor. [Citations.] [¶] In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . .'" (*Campbell v. General Motors Corp.*, *supra*, 32 Cal.3d at pp. 117-118; *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 347.)

## I. Res judicata

One basis upon which nonsuit was granted and judgment was entered was that the instant action was barred by res judicata. Defendants argue that Von Beltz asserted a defense based on the FHA in the earlier unlawful detainer proceeding, preventing her from asserting an FHA claim in this action.

"As generally understood, '[t]he doctrine of *res judicata* gives certain *conclusive effect to a former judgment* in subsequent litigation involving the same controversy.' [Citation.] The doctrine 'has a double aspect.' [Citation.] 'In its primary aspect,' commonly known as claim preclusion, it 'operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]' [Citation.] 'In its secondary aspect,' commonly known as collateral estoppel, '[t]he prior judgment

. . . "operates"' in 'a second suit . . . based on a different cause of action . . . "as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." [Citation.]' [Citation.] 'The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]'" (*People v. Barragan* (2004) 32 Cal.4th 236, 252-253; *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.)

The burden of proving each element of res judicata falls to the party seeking to assert it. (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 529.) A judgment in an unlawful detainer action generally has limited res judicata effect because of the summary nature of such a proceeding. (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 255.)

Defendants contend that Von Beltz asserted an FHA-based defense in the prior unlawful detainer action. "Full and fair" litigation of an affirmative defense—even in an unlawful detainer proceeding—may result in a judgment conclusive upon issues material to the defense, but only if a fair opportunity to litigate the defense is provided. (*Vella v. Hudgins*, *supra*, 20 Cal.3d 251, 256-257.) The record must disclose that the defense was asserted in the prior action "and that the legal and factual issues therein were fully litigated." (*Id.* at p. 258.) The record here contains no such evidence.

Defendants point out trial minutes from the unlawful detainer action. Those minutes state: "[Von Beltz's] oral motion for bifurcation of the trial regarding accommodations is not heard at this time. . . . [¶] [Von Beltz's] hearing regarding accommodations is heard, argued and denied." Defendants also rely on an order from the appellate division of the superior court stating that the trial court denied Von Beltz's request for a bifurcated hearing to determine whether an accommodation was required under the FHA. This evidence only proves one thing—that Von Beltz sought a bifurcated trial in the prior action to determine whether accommodations were required

6

under the FHA, but the request for a bifurcated trial was denied.  The record does not show that the FHA-based accommodation claim was fully litigated in the unlawful detainer proceeding.  It was thus incorrect to find that the instant action was barred by res judicata.

**II.  Legal viability of plaintiff's claim**

Although the trial court's ruling on res judicata was incorrect, the grant of nonsuit was still proper if plaintiff's evidence was insufficient to establish her FHA claim.

Under the FHA, it is unlawful for a person in the business of selling or renting dwellings:  "To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—(A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter."  (42 U.S.C. § 3604, subd. (f)(1).)  "Discrimination" under this provision includes:  "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  (42 U.S.C. § 3604, subd. (f)(3)(B).)

Trial court testimony established that in the 12 months preceding its purchase of the subject property, Bentley had engaged in at least three transactions involving the sale or rental of a dwelling.  It thus qualified as a "person . . . in the business of selling or renting dwellings," making it subject to the foregoing FHA provisions.  (42 U.S.C. § 3603, subd. (c)(1).)  Furthermore, the trial court found that Von Beltz was a person with a "handicap" under the FHA, as she has "a physical or mental impairment which substantially limits one or more . . . major life activities."  (42 U.S.C. § 3602, subd. (h)(1).)  Nevertheless, the trial court found that defendants did not violate the FHA, and that Von Beltz failed to show that defendants were required to accommodate her by delaying her eviction from the property.

Generally, in order to establish a claim under the FHA, a plaintiff must show that: (1) she suffers from a handicap as defined by the FHA, (2) the defendants knew of the plaintiff's handicap or should reasonably be expected to know of it, (3) accommodation

7

of the handicap may be necessary to afford the plaintiff an equal opportunity to use and enjoy the dwelling, and (4) the defendants refused to make such accommodation. (*U.S. v. California Mobile Home Park Management Co.* (9th Cir. 1997) 107 F.3d 1374, 1380; *Giebeler v. M&B Associates* (9th Cir. 2003) 343 F.3d 1143, 1147 (*Giebeler*).).

The FHA, however, only requires that "reasonable" accommodations be made. (*Giebeler*, *supra*, 343 F.3d 1143, 1148.) "[A]n accommodation will not be reasonable, and thus will not be required, if it 'would impose an undue financial and administrative burden' on the landlord or 'would fundamentally alter the nature' of the landlord's operation." (*Douglas v. Kriegsfeld Corp.* (D.C. 2005) 884 A.2d 1109, 1120 (*Douglas*).) Under the facts of this case, Von Beltz's request that defendants accommodate her by indefinitely delaying her eviction was not reasonable as a matter of law.

The FHA prohibits disability-related discrimination against actual or prospective buyers or renters and those associated with them. (42 U.S.C. § 3604, subd. (f)(1).) In this case, neither Von Beltz nor Weston was an actual or prospective buyer or renter. Defendant Bentley took title to the subject property in April 2011 following a foreclosure sale. Von Beltz and Weston continued to live in the residence until September 2011, despite not having a valid claim to title or a rental agreement with defendants. Although individuals with disabilities are to be granted accommodations necessary to afford them "equal opportunity to use and enjoy a dwelling" (42 U.S.C. § 3604, subd. (f)(3)(B)), no provision of the FHA provides an entitlement for an individual to use and enjoy a dwelling in which the individual has no potentially valid basis to live.

*Giebeler* found that "mandating lower rents for disabled individuals" would likely fail the FHA's reasonability standard. (343 F.3d 1143, 1154.) Likewise, it would not be reasonable to require a property owner—who has validly acquired title and succeeded in a unlawful detainer action—to suffer a financial burden by indefinitely delaying eviction of a person to whom he or she has no ongoing contractual or legal obligation. The overriding reason for plaintiff's eviction was the failure of Weston, the former owner, to make mortgage payments; it was not due to an unreasonable act of defendants.

8

Plaintiff argues that *Douglas*, *supra*, 884 A.2d 1109, supports her position. The appellant in *Douglas* suffered from a mental illness that led her to neglect the care of her apartment, leaving it in a filthy condition. An eviction proceeding was brought, and the appellant sought a stay to allow a governmental entity responsible for helping disabled individuals time to clean her apartment. The appellate court found sufficient evidence for a jury to determine that the landlord failed to engage the appellant in a discussion of her request for a reasonable accommodation and failed to grant the requested accommodation, which would have cured the appellant's default—i.e., failure to keep the apartment in a clean and sanitary condition. (*Id.* at pp. 1136-1137.) Thus, in *Douglas*, the appellant did not fail to pay rent, and potentially could still cure the default by having the unit cleaned. In this matter, the period to cure default (on the loan) passed before Bentley even acquired title to the property. Unlike the appellant in *Douglas*, plaintiff had no rental or other agreement with defendants and no proposal to ameliorate the problem that led to the eviction.

This matter also differs from *Giebeler*, *supra*, 343 F.3d 1143, another case relied on by plaintiff. The plaintiff in *Giebeler* was disabled because of AIDS and unable to individually afford an apartment in a desired complex. The plaintiff's mother, however, could afford the apartment and offered to rent it for her son. The owners of the complex refused to rent to either individual, citing a company policy against cosigners. Finding that the rental arrangement requested by the plaintiff would not require the landlord to accept less rent, would not alter the essential obligations of tenancy at the complex, and would involve a lessee with the proper financial qualifications (plaintiff's mother), the appellate court determined that the plaintiff's requested accommodation was reasonable. (*Id.* at pp. 1157-1159.) In contrast, the owner of the property here was certain to incur a financial liability if Von Beltz were allowed to continue living in the residence, and Von Beltz failed to propose an accommodation that would eliminate this problem.[2]

_____

[2] Weston testified that an offer was made to defendants to purchase the property for $525,200, which was to be funded by a Mr. Miller, a co-occupant of the property. The

9

In sum, defendants had no obligation to indefinitely delay plaintiff's eviction. Therefore, plaintiff's FHA claim could not succeed, and nonsuit was properly granted.

## III. Lack of reporter's transcript

Lastly, plaintiff argues that we are unable to properly decide this appeal because the trial court denied her request for a court reporter with a waiver of fees, resulting in trial proceedings that were not recorded by a certified court reporter.

Plaintiff moved for a settled statement in the trial court (Cal. Rules of Court, rule 8.137), and the detailed statement submitted by plaintiff was approved by the trial court without changes relevant to our analysis. Because this appeal is resolvable as a matter of law based on undisputed background facts, the lack of a reporter's transcript is immaterial.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

---

record does not contain any reference to the context in which this offer was made, the terms of the offer, or whether the offer was reasonable. Furthermore, plaintiff does not provide any authority for the proposition that she could dictate how defendants utilized the property, including whom they could sell the property to and for what price.

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.